# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50037 | **DATE** | 12/20/2002 |
| **CASE TITLE** | Beloit Liquidating Trust vs. Century Indemnity Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendant's motion for summary judgment is denied. All parties, including the third-party defendant, are ordered to schedule a settlement conference with the magistrate judge within thirty-five days. The magistrate judge may choose to conduct a settlement conference himself or order mediation of the dispute.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | DEC 23 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12-20-02 | |
| /SEC | courtroom deputy's initials | 02 DEC 23 AM 8:38 FILED-WD | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)
# MEMORANDUM OPINION AND ORDER

Plaintiff, Beloit Liquidating Trust, brings this action against defendant, Century Indemnity Co., alleging breach of a duty to defend (Count I), breach of a duty to pay ultimate net loss (Count II), seeking a declaration defendant is estopped to deny coverage (Count III), and a declaration defendant must indemnify plaintiff (Count IV). Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.[1] Plaintiff is a citizen of Texas. Defendant is a citizen of Pennsylvania. The amount in controversy exceeds $75,000. Defendant moved for summary judgment.

Plaintiff[2] operated a manufacturing site in Rockton, Illinois from 1959 until 1999. (LR 56.1(a) ¶ 8) In 1991, plaintiff was sued by the Illinois Environmental Protection Agency ("IEPA") for alleged release of hazardous substances into the soil and groundwater at the site. (Id. ¶ 7) Defendant previously had issued plaintiff two policies of insurance effective October 1, 1984 to October 1, 1985, policies ZCG 00 33 21 ("Policy 21") and ZCU 00 22 76 ("Policy 76"). (Id. ¶ 55, Exh. J, K) Policy 76 is an excess policy with limits of $4,500,000 which lists in its schedule A that one of the policies underlying it is Policy 21 "and self-insurance". (Id. Exh. K) The limits of this underlying insurance are listed as $2,250,000 each occurrence and $3,000,000 aggregate. (Id.) Policy 21 on the face of its declaration page indicates a $500,000 limit for each occurrence and a retained limit of $1,750,000 each occurrence and $2,500,000 annual aggregate. (Id. Exh. J) Policy 21 includes endorsement 3 captioned "SELF-INSURED RETENTION ENDORSEMENT". It states in part, " Notwithstanding anything contained in this policy to the contrary, it is understood and agreed that the company's limit of liability under the policy, inclusive of all coverages granted under the policy, shall be only for the <u>ultimate net loss</u> in excess of the greater of either . . ." the retained limit or the applicable limits of other available insurance. (Id.) "Ultimate net loss" is defined to mean "sums paid in settlement of losses for which the insured is liable after making deductions for all recoveries, salvages and other insurances . . . whether recoverable or not, and shall exclude all 'costs', but include . . . legal expenses including taxed court costs and premium on appeal bond." (Id.) Defendant argues this endorsement makes policy 21 an excess policy with no duty to defend plaintiff but only to pay legal expenses as part of the ultimate net loss after the self-insured retention and other underlying insurance is exhausted. Plaintiff maintains policy 21 is a comprehensive general liability policy that obligated defendant to provide a defense to the IEPA action as well as pay for losses in excess of the self-insured retention ("SIR") up to the policy limits. Plaintiff seeks recovery for defenses costs and amounts paid to settle the IEPA action.

Plaintiff asserts California law applies while defendant argues Illinois law applies. "Federal courts sitting in diversity must look to the conflict-of-laws rules of the forum state for the applicable substantive law." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). Illinois is the forum state and the first question in Illinois is whether there is a conflict that would make a difference in the outcome of the case. See Household Int'l Inc. v. Liberty Mut. Ins. Co., 749 N.E.2d 1, 8 (Ill. App.), appeal denied, 755 N.E.2d 477 (Ill. 2001). Both states examine an insurance contract to determine the intent of the parties looking to the contract as a whole and relying on the language of the contract as the determining factor unless the language is ambiguous. See Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 655 N.E.2d 842, 846 (Ill. 1995); Bank of the West v. Superior Court, 833 P.2d 545, 552 (Cal. 1992). Because the plain contract language will determine the issues on summary judgment, no outcome determinative difference exists between California and Illinois law and the court will apply the law of the forum, Illinois. See Int'l Admin'r Inc. v. Life Ins. Co. of N. Am., 753 F.2d 1373, 1376 fn. 4 (7th Cir. 1985).

Plaintiff claims policy 21 is primary not excess insurance and that defendant had a duty to defend plaintiff in the underlying litigation. However, a review of the contract language shows it is an excess policy. The self-insured endorsement expressly limits defendant's liability to ultimate net loss in excess of plaintiff's retained limit. (LR 56.1(a) Exh. J) The contract clearly contemplates that defendant's liability will only arise after plaintiff has exhausted its SIR of $1,750,000 per occurrence, $2,500,000 aggregate and that legal expenses will be paid as part of the ultimate net loss. These are characteristics of excess rather than primary insurance. See Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co., 494 N.E.2d 634, 651 (Ill. App. 1986) aff'd 514 N.E.2d 150 (1987); see also Seaman & Kittredge, "Excess Liability Insurance: Law & Litigation," 32 Tort & Ins. L. J. 653, 655 (Spring 1997). While the printed form language creates a duty to defend, the SIR endorsement overrides it by its language limiting defendant's liability "under all coverages" to ultimate net loss, including legal expenses, in excess of the SIR.

Plaintiff contends the SIR is simply a deductible that must be satisfied before the indemnity provisions of the policy are triggered. However, a deductible generally reduces the coverage limit while an SIR does not. See Seaman & Kittredge, 32 Tort & Ins. L. J. at 656. A $1,750,000 deductible from a $500,000 liability limit would reduce the coverage amount to less than zero.

Plaintiff's reliance on USX Corp. v. Liberty Mut. Ins. Co., 645 N.E.2d 396 (Ill. App. 1994) to support its claim that an SIR is not insurance is misplaced. USX dealt with an interpretation of Illinois's Indemnity Act prohibiting an agreement to indemnify a person from his own negligence but making an exception for a promise to procure insurance to cover the negligence. The court held that a promise to include a party under the promisor's self-insurance program was an unlawful agreement to indemnify not a lawful promise to obtain insurance. The court observed that "self-insurance" is merely a recognition that there is no insurance, a "mere private promise to indemnify." Id. at 401. Here, plaintiff's self-insurance does not implicate a purported indemnification by plaintiff of a third party for the third party's negligence. Plaintiff is simply agreeing it will pay the SIR amount for claims against it before defendant's liability under the policy is triggered. Having an SIR underlie excess insurance is common, see Seaman & Kittredge, 32 Tort & Ins. L. J. at 656, and the fact a SIR is not actually insurance does not render an excess policy primary simply because a SIR rather than another insurance policy underlies it.

Defendant argues it is entitled to summary judgment because plaintiff cannot identify during which year or years the property damage occurred and, therefore, plaintiff must exhaust the limits of all primary insurance policies in force from 1959 until 1984 plus the SIR under defendant's policies before defendant's liability is triggered. Since the coverages of all these underlying policies and the SIR exceed plaintiff's total loss, including legal expenses, defendant asserts it cannot be liable on the policies. Plaintiff counters that a genuine issue of material fact exists as to when the damage was done. Plaintiff presents the unrebutted affidavit of hydrogeologist Kenneth Quinn in which he opines to a reasonable degree of scientific certainty, that the activities of plaintiff which may have led to groundwater contamination began in the mid-1970's, ended in the mid-1980's and "that the largest amount of potential for damage occurred toward the end of this period." (LR 56.1 (b) Exh. 13 ¶¶ 8,9,11) Plaintiff maintains this affidavit supports the conclusion that the time of the occurrence can be ascertained, at least within a fairly narrow range of years, and that it cannot be said as a matter of law that the underlying primary insurance and SIR have not been exhausted. Defendant responds that even taking a ten-year period the underlying coverages plus the SIR for that period exceed the amount of plaintiff's loss so that defendant's policies are never triggered. On summary judgment, the facts are viewed and all reasonable inferences drawn in favor of the nonmoving party. Newbold v. Wisconsin State Pub. Defender, No. 01-1700, 2002 WL 31554282, *2 (7th Cir. Nov. 19, 2002). Plaintiff has shown a genuine issue of material fact. Construing the Quinn affidavit most favorably to plaintiff, a genuine issue of material fact exists as to whether the time of injury can be traced to a time that would implicate coverage under defendant's policies. Defendant's policies covered October 1, 1984 to October 1, 1985. Quinn's opinion is that the greatest potential for damage to the groundwater occurred toward the end of a period beginning in the mid-1970's ending in the mid-1980's. The end of this period, even if as much as five years, and assuming the triggering of all policies in force in the 1980's, would yield underlying insurance of $3,000,000 and a SIR of $1,750,000 for a total of $4,750,000 underlying defendant's policies. The IEPA settlement exceeds these amounts so even assuming horizontal exhaustion of the 1980's policies and SIR[3], defendant's policies would be reached.[4]

Defendant's motion for summary judgment is denied. All parties, including the third-party defendant, are ordered to schedule a settlement conference with the magistrate judge within thirty-five days. The magistrate judge may choose to conduct a settlement conference himself or order mediation of the dispute.

---

[1] Plaintiff also asserts jurisdiction under 28 U.S.C. § 1331. Because the court has diversity jurisdiction, it is unnecessary to reach this question.

[2] References to "plaintiff" hereafter will mean Beloit Corporation for matters arising before the confirmation of its Chapter 11 Plan, which created Beloit Liquidating Trust, and Beloit Liquidating Trust for matters thereafter.

[3] Because a fact question exists regardless of whether horizontal exhaustion applies, a decision need not be made at this stage on its applicability or whether a conflict exists between Illinois and California law requiring a choice between them on this issue.

[4] Defendant argues in its reply brief that plaintiff has received payment from one insurer which would reduce plaintiff's liability to less than the amount needed to trigger defendant's policies and also that plaintiff has admitted that all discharge of contaminants had ended by 1983 before the effective date of defendant's policies. However, defendant did not cite evidence in the record in its LR 56.1(a) statement to support these assertions and raised them for the first time in its reply. The court will not consider these assertions for purposes of this summary judgment motion. See LR 56.1(a)(3).