# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. MICHAEL MAHONEY |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50037 | **DATE** | 2/13/2003 |
| **CASE TITLE** | Beloit Liquidating vs. Century Indemnity Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Century's Motion to Compel is granted in part and denied in part. Beloit's Motion for Protective Order is also granted in part and denied in part. The Magistrate Judge orders Beloit to designate a 30(b)(6) witness to answer Topics 28, 29, and 30 of Century's first deposition notice and Topics 2, 3, 4, 5, 6, 7, 9, 10, 11, 12(a) of Century's second deposition notice. The Magistrate Judge orders this done within a reasonable time. Further, the Magistrate Judge orders Beloit to answer Topics 20 and 23 of Century's first deposition notice and Topics 1, 8, and 12(b) via written response within 14 days of this Order. Beloit is also ordered, as per its alleged agreement with Century, to turn over all documents in regards to Request Number 38 and 39. Century's Second Motion to Compel is granted in part and denied in part. The Magistrate Judge orders that Beloit submit the "Fishman" documents to Century in conformity with this Order. Beloit may mark "highly confidential" on the documents and, if appropriate, produce a second privilege log in conformity with this Order. With regards to the "Johnson & Bell" documents, the Magistrate Judge finds providing Century documents which evaluate settlement options in the insurance case against Employers Insurance of Wausau would provide a tactical advantage for Century and therefore denies Century's Second Motion to Compel. However, as agreed to by Beloit, Beloit is ordered to produce JB PR 0043-0047.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | 13 |
| | Notified counsel by telephone. | | FEB 13 2002 | | |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | dockting deputy initials | | |
| sp | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT 03 FEB 13 AM 11:00 FILED-WD | FEB 13 2002 date mailed notice | sp | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

BELOIT LIQUIDATING TRUST, )
)
    Plaintiff, )    Case No. 02 C 50037
)
    v. )    Philip G. Reinhard
)    P. Michael Mahoney
CENTURY INDEMNITY COMPANY, )
)
    Defendant, )
)
    v. )
)
UNITED INSURANCE COMPANY )
)
    Third Party Defendant. )

### Memorandum Opinion and Order

The Magistrate Judge must address numerous discovery disputes between Beloit

Liquidating Trust ("Beloit") and Century Indemnity Company ("Century"). On December 30,

2002, Century filed its Amended Motion to Compel ("Century's First Motion to Compel")

asking the Magistrate Judge to order, *inter alia*, Beloit to designate a corporate designee(s) to

testify as to certain Topics contained in Century's two deposition notices. Also on December 30,

2002, Beloit filed its Motion for Protective Order ("Beloit's Motion for Protective Order")

seeking to limit Century's Rule 30(b)(6) depositions. Both motions have been fully briefed.

Then, on January 22, 2003, Century filled another Motion to Compel ("Second Motion to

Compel") asking the Magistrate Judge to, *inter alia*, order Beloit to turn over certain documents

listed on its privilege log. That motion too is fully briefed. Barring any future filings, the

Magistrate Judge is prepared to rule on all pending motions in the hope to move this case onto

the final pre-trial order stage. For the following reasons, Century's First Motion to Compel is

granted in part and denied in part . Beloit's Motion for Protective Order is granted in part and denied in part. Finally, Century's Second Motion to Compel is granted in part and denied in part.

## Background

The facts of this case are at times confusing and complex. From 1959 to 1999, Beloit operated a manufacturing facility in Rockton, Illinois. (Compl. at 3). At this facility, Beloit engaged in the production of paper making machines. (*Id.*). In producing these machines, Beloit used chemicals at the facility, including volatile organic compounds used to clean the machine parts. (*Id.*). In addition, during this same time period, Beloit operated wastewater treatment lagoons as part of its own research and development. (*Id.*).

A problem arose when chemical tests of the groundwater at or near Beloit's facility revealed the presence of volatile organic compounds. (*Id.*). On August 30, 1990, the United States Environmental Protection Agency ("USEPA") listed the Beloit facility, in Rockton, Illinois, because of the contamination detected at and near the facility, on the National Priorities List under Section 104 of the Comprehensive Environmental Response and Compensation Liability Act. 42 U.S.C. §§ 9601-9675. In May 1991, the State of Illinois and the Illinois Environmental Protection Agency ("IEPA") named Beloit as a defendant for allegedly damaging the State's water resources in violation of Illinois law. (*Id.* at 4).

The instant case arises out of the relationship between Beloit and Century. Apparently Beloit entered into a series of contracts for general liability and umbrella insurance with Century covering the period from 1984 to 1986. Century's policy provided general liability insurance to Beloit for the period of October 1, 1984 to October 1, 1985 with a limit of $500,000 over the

self-insured retention of $1.75 million per occurrence and $2.5 million in the aggregate. (*Id.*).

In addition to Century's general liability insurance, Beloit also had umbrella insurance with Century which, covering the same period of time, had a limit of $4.5 million over the self-insured retention of $1.75 million per occurrence and $2.5 million in the aggregate. (*Id.*). It also allegedly created an obligation on Century to defend Beloit. Beloit alleges further that these policies impose upon Century the duty to pay Beloit's "ultimate net loss" that exceeds Beloit's self-insured retention of $1.75 million per occurrence or $2.5 million in the aggregate. (*Id.*).

Beloit claims it notified Century of the claims threatened by the State of Illinois and the IEPA in a letter dated July 18, 1990. (*Id.* at 6). Beloit alleges initially Century did not respond and when it did, allegedly more than one year later, Century claimed it had no duty to reimburse Beloit for defense costs. (*Id.* at 6).

In early 2001, Beloit paid the State of Illinois $ 5.7 million to settle Beloit's obligations to clean up the property. (*Id.* at 7). Beloit alleges that by early 2001, it had incurred approximately $4.1 million in defense and investigation costs. (*Id.*). Beloit further alleges that its ultimate net losses under Century's policies exceeds $5 million. (*Id.*).

On August 13, 2002, Beloit filed a four count complaint with jurisdiction based on 28 U.S.C. §1331 and §1332, alleging a breach of duty to defend, a breach of duty to pay ultimate net loss, a declaration that Century is estopped to deny coverage, and a declaration that Century must indemnify Beloit. (Compl. at 2-12). Century filed its answer and twenty-nine affirmative defenses on September 4, 2002.

## Discussion

*I. Century's First Motion to Compel and Beloit's Motion for Protective Order*

The first matter before the Magistrate Judge is Century's Motion to Compel Beloit to designate a corporate designee(s) to testify on Topics 20, 23, and 28-30 of Century's first deposition notice, and Topics 1-12 of Century's second deposition notice. Beloit's Motion for Protective Order covers these Topics and will be discussed simultaneously.

*A. Rule 30(b)(6)*

Rule 30(b)(6) authorizes litigants to name a business entity as a deponent. Fed. R. Civ. P. 30(b)(6). Doing so places a duty upon the business entity to designate an individual to testify on behalf of the corporation who has knowledge responsive to subjects requested in the Rule 30(b)(6) requests of its opponents. *See Smithkline Beecham Corp. v. Apotex Corp.*, No 98 C. 3952, 2000 WL 116082, * 8 (N.D. Ill. Jan. 24, 2000)(*citing Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993)). Thus, Rule 30(b)(6) imposes a duty upon the business entity to perform a reasonable inquiry for information and prepare the selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know. *See Crouse Cartage Co. v. National Warehouse Investment Co.,* No. 02-071, 2003 WL 118001, at * 5 (S.D. Ind. Jan. 13, 2003); *Canal Bridge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *1 (N.D. Ill. July 19, 2001); *Alexander v. F.B.I.*, 186 F.R.D. 148, 152 (D.D.C. 1999). However, if the deponent is unable to answer questions about certain relevant areas of inquiry then the business entity must designate additional parties to satisfy a Rule 30(b)(6) notice. *Alexander,* 186 F.R.D. at 152.

In providing a Rule 30(b)(6) witness, the business entity is presenting testimony not of the knowledge or opinion of the deponent, but that of the business entity. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). In effect, the deponent is "speaking for the corporation." *Id*. The deponent must testify to both the facts within the knowledge of the business entity and the entity's opinions and subjective beliefs. *Id*.

*B. Rule 26(c)*

Rule 26(c) states "for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (1)that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co., v. Rhinehart*, 467 U.S. 20, 36, 104 (1984). Rule 26(c) states only good cause is required in determining whether or not to issue a protective order. *Id*. at 37. In deciding whether good cause exists, the district court must balance the interests of the parties taken into account, the harm to the party seeking the protective order, and the importance of the disclosure to the non-moving party. *Wiggins v. Burge*, 173 F.R.D 226, 229 (N.D. Ill. 1997).

The Magistrate Judge will address first those Topics from Century's first deposition notice (Topics 20, 23, 28-30) and then those Topics from Century's second deposition notice (Topics 1-12).

**1. Topic 20**

Century's Topic 20 requests:

> The identity of all plaintiff's employees, former employees, or agents who have ever provided deposition testimony, sworn statements, or declarations in connection with any matter or proceeding (other than

this case) directly or indirectly relating to the exercise of
environmental contamination or the operations at the Rockton Site,
and the contents of all such statements or declarations and transcripts
of such testimony, as well as the location where such statements,
declarations, and transcripts are maintained by plaintiff.

Century argues Beloit "has provided inconsistent responses to Century's written discovery request" and has "failed to produce complete transcripts of the depositions known to date." (Century's First Mot. to Compel at 12). Thus, Century seeks a Beloit designee to testify regarding Beloit's full and complete knowledge as to the prior testimony of former employees. (*Id.*).

Beloit, in its Motion for Protective Order, argues Century has asked for the same information in an Interrogatory (No. 12)[1] and Beloit has responded. According to Beloit, a 30(b)(6) witness would provide the same information as provided in Beloit's response to Interrogatory 12, but providing a witness would place a much greater burden on Beloit. (Beloit's Mot. for Protective Order at 5). Beloit acknowledges that it had to amend its response to Interrogatory No. 12 and further acknowledges its continuing obligation to do so under the Federal Rules of Civil Procedure.

After reviewing the material cited by both parties, the Magistrate Judge agrees with Beloit that written responses are more efficient and will adequately meet the needs of Century. Pursuant to Rule 31 a "deposition upon written questions may be taken of a public or private corporation ... in accordance with the provisions of Rule 30(b)(6)." Fed. R. Civ. P. 31(a)(3). Because Century's Topic 20 notice is tightly written and because discovery is coming to a close, the Magistrate Judge orders Topic 20 be answered via written response within 14 days of this Order.

---

[1] Interrogatory No. 12 states: "If any past or present Representative or employee of Plaintiff has given any deposition, interview or other testimony in connection to or relating to any action or proceeding arising out of or relating to the Site, (a) Identify the Representative or individual, and (b) the date the testimony and proceeding was given."

## 2. Topic 23

Topic 23 requests:

> Identity of department(s), unit(s), and individuals at Beloit responsible for and/or involved in submitting and processing claims under general liability insurance contracts, including providing notice to insurers or Beloit's broker and maintaining claims records.

Century argues Beloit previously agreed to provide a witness to testify as to Topic 23 and subsequently designated Mr. Fishman to testify. (Century's First Mot. to Compel at 10). However, allegedly Mr. Fishman was unable to testify as to issues prior to the date of his employment at Beloit, 1993. (*Id.*). Century further alleges that Beloit now takes the position that because Century may have obtained this information from a fact witness, Mr. Hays, Beloit is under no obligation to provide testimony through a corporate designee. (*Id.*). However, Century argues that because Mr. Hays was not designated as a corporate designee at the time of his deposition, Century did not inquire as to Topic 23 with Mr. Hays.

According to Beloit, Century has had the information requested in Topic 23 since at least 1985, when it retained International Surplus Adjusting Services to review Beloit's claims handling procedures. (Beloit's Mot. for Protective Order at 6). This document, allegedly, clearly identified Dennis Hays as one of two people responsible for handling insurance claims. In fact, Beloit argues that during Mr. Hays September 2002 deposition, Century asked questions to Mr. Hays about Century's claims handling procedures, which Mr. Hays thoroughly answered. (*Id.*).

The Magistrate Judge agrees with Beloit. As stated above, the Magistrate Judge believes, in regards to Topic 23, written responses are more efficient and will adequately meet the needs of Century. Pursuant to Rule 31 a "deposition upon written questions may be taken of a public or

private corporation ... in accordance with the provisions of Rule 30(b)(6)." Fed. R. Civ. P. 31(a)(3). Because Century's Topic 23 notice is tightly written and because discovery is coming to a close, the Magistrate Judge orders Topic 23 be answered via written response within 14 days of this Order.

**3. Topics 28-30**

Topics 28-30 seeks information relating to the "description, location and custodian(s) of records for all documents," the "source of and search for documents relating to the Rockton Site," and Beloit's "document retention, filing, storage, or destruction polices."

Century asserts that although Beloit designated Mr. Fishman as the corporate designee as to Topics 28-30, Mr. Fishman provided "limited information and admitted that he was not the person knowledgeable about Topic 29 and Topic 30 and had limited knowledge as to Topic 28." (Century's First Mot. to Compel at 11). Century further claims that Beloit is willing to provide the information but only through interrogatories rather than a 30(b)(6) witness. (*Id.*).

Beloit acknowledges that Mr. Fishman was the corporate designee as to Topics 28-30 and that Mr. Fishman, perhaps due to "information overload," could not recall the answer to many questions asked by Century. (Beloit's Mot. for Protective Order at 6). Beloit asks the Magistrate Judge to, rather than produce Mr. Fishman again, allow Beloit to answer Topic 28-30 through written discovery such as interrogatories. (*Id.* at 6-7). Additionally, and quite surprisingly, Beloit for the first time in its reply to its Motion for Protective Order, asserts that, as to Topics 28 and 29, Century has known since at least September 2002 that Beloit's historic records relating to all aspects of is business are kept in a "dark and unheated" warehouse in Beloit, Wisconsin. (Beloit's Reply in Supp. of Mot. for Protective Order at 4). Thus, Beloit argues that it can offer, in detail, the extent of its document production through interrogatory and believes that deposition testimony on these topics

8

is "unwarranted, burdensome, and certain to result in an unnecessary expense." (*Id.*).

The Magistrate Judge agrees with Century. Beloit must remember that Rule 30(b)(6) imposes a duty upon the business entity to prepare the selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know. *See Alexander*, 186 F.R.D. at 152. If the deponent, such as Mr. Fishman, is unable to answer questions about certain relevant areas of inquiry then Beloit must designate another individual to satisfy a Rule 30(b)(6) notice. *Id.* Thus, Beloit must designate a 30(b)(6) witness to answer Topic 23 within a reasonable time.

### 4. Topic 1

Topic 1 requests:

> The factual basis of Beloit's allegation that Century engaged in vexatious and unreasonable conduct in handling Beloit's claims as alleged in Beloit's First Amended Complaint for Damages and Declaratory Relief.

It appears that during a Rule 37.2 conference it was suggested that instead of providing testimony, Topic 1 could be answered through a stipulation. However, apparently during a subsequent Rule 37.2 conference, Beloit withdrew its request to enter into a stipulation and now insists that Century serve interrogatories as to Topic 1. (Century's First Mot. to Compel at 6).

Beloit fears that "if ordered to provide a witness, it would likely be a lawyer, and there is a fair chance the deposition would degenerate into something more resembling an argument than testimony." (Beloit's Mot. for Protective Order at 7). Thus, Beloit seeks a different method of discovery, such as contention interrogatories, than that selected by Century. (*Id.*).

The Magistrate Judge has little doubt that if Beloit designates a lawyer to testify as to Topic

1 it will turn into "something more resembling an argument than testimony." (*Id.*). Pursuant to Rule 31 a "deposition upon written questions may be taken of a public or private corporation ... in accordance with the provisions of Rule 30(b)(6)." Fed. R. Civ. P. 31(a)(3). The Magistrate Judge believes that in regards to Topic 1, written responses are more efficient and will adequately meet the needs of Century. The Magistrate Judge orders Topic 1 be answered via written response within 14 days of this Order.

## 5. Topic 2-6

In Topics 2-6, Century seeks testimony regarding the preparation, negotiation and execution of the Asset Purchase Agreement (Topic 2); the Holdback Fund (Topic 3); the agreement concerning the Rockton site (Topic 4); the Illinois Environmental Protection Agency and the United States Environmental Protection Agency agreement (Topic 5); and the Rockton final purchase agreement (Topic 6).

Century argues that testimony is needed from a Rule 30(b)(6) witness for Topics 2-6 because it appears that, although Beloit seeks reimbursement from Century for the $5.7 million settlement with the IEPA and the USEPA, "this amount was not paid to the state and federal agencies. It appears from the documents that the $5.7 million holdback fund was distributed in the following manner: $2.7 million to the [USEPA] in an escrow account and $3 million to Guiffre, L.L.C." (Century's Mem. in Supp. of its Mot. to Compel at 9). Further, Century argues that it appears that Giuffre paid Beloit $4 million for the Rockton Site and then Giuffree provided $3 million in letters of credit to the USEPA to guarantee clean up. Thus, Century concludes, the interrelationship between the Holdback Fund, the Settlement Agreement Concerning the Rockton Site, the Settlement Agreement between the IEPA and the USEPA and Guiffre, and the Rockton Final Purchase

10

Agreement is factually intensive and Century seeks to explore discovery through oral testimony in order to determine the reasonableness of the settlement and to determine whether certain portions of the settlement (namely the $3 million payment to Giuffre) are covered under the insurance policies. (*Id.* at 10).

As to Topics 2-6, Beloit argues that discovery not be had upon any aspect of the Guifree sale because this case is about whether Century owes Beloit a defense or indemnity obligation in the IEPA matter and not about the business or legal decisions Beloit made in the course of liquidating its assets. (Beloit's Mot. for Protective Order at 8). Citing Rule 26(a)(1), Beloit argues Topics 2-6 are not relevant to any claim or defense raised in this case and that Topics 2-6 are overly broad in that Century purports to know everything about the preparation, drafting, and execution of the Rockton Sale Agreement, "as if it intends to inappropriately critique business and legal decisions Beloit made in the bankruptcy." (*Id.*). Finally, Beloit argues certain aspects of the Guiffre sale involve attorney/client communications between Beloit's insurance and bankruptcy counsel. (*Id.*).

The Magistrate Judge does not agree with Beloit that Topics 2-6 are irrelevant. It does not appear that Century is attempting to "critique business and legal decisions Beloit made in the bankruptcy," but rather, it appears Century is attempting to ascertain the real terms of this package deal put together by Beloit and the reasonableness of the deal. Such information is therefore relevant to the instant case. If there are valid attorney-client objections, the court is confident they will be made by Beloit. Beloit is ordered to designate a Rule 30(b)(6) witness to answer Topics 2-6 within a reasonable time.

## 6. Topic 7

In Topic 7, Century seeks:

> Any and All communications with Guiffre Concerning the sale of the Site including the Identity of person [sic] involved in the Communications and the contents of the Communications including but not limited to the nature, extent, source and cause of the Contamination at the Site; historical use of Contaminants and Hazardous Materials by Beloit at any time at the Site including the type(s) of Contaminants and Hazardous Materials; the time period of their use and the Identity of persons with knowledge of their use; and any Release(s) and or Disposal of any Pollutants and/or Contaminants and/or Hazardous Materials at the Site.

Century's support for this Topic is discussed above under Topics 2-6. Beloit argues Topic 7 is "simply an unreasonable and inappropriate one for a Rule 30(b)(6) deposition, and sets up any witness for failure[ ]" because "it is unreasonable to expect a person to testify about 'any and all' communications, both verbal and written ... ." (Beloit's Mot. for Protective Order at 9). Further, Beloit argues that there is no practical means that exists to channel all information asked in Topic 7 to one person. (*Id.*).

The Magistrate Judge disagrees with Beloit. As stated above, Rule 30(b)(6) imposes a duty upon the business entity to perform a reasonable search for information and to prepare the selected deponent to adequately testify not only on matters known by the deponent, but also on subjects that the entity should reasonably know. *See Alexander*, 186 F.R.D. at 152. Beloit must designate an individual who can present testimony of behalf of the corporation and who can speak for the corporation. See Taylor, 166 F.R.D. at 361. Thus, Beloit must designate a 30(b)(6) witness to answer Topic 7 within a reasonable time. That designee must make a reasonable search for the information based on the circumstances and be prepared to testify based on that reasonable search.

See *Crouse Cartage Co.*, 2003 WL 118001, at * 5; *Canal Bridge Co.*, 2001 WL 817853, at *1; *Alexander*, 186 F.R.D. at 152.

## 7. Topic 8

Topic 8 seeks:

> Any appraisals of the Site including any studies, investigations, reports which pertain to the Contamination at the Site and/or any and all real estate appraisals evaluating the value of the Site.

Century's support for this Topic is discussed above under Topics 2-6. Beloit initially argues that Topic 8 is irrelevant because the value of the Rockton site is not at issue in this lawsuit. Even if relevant, Beloit argues, Beloit produced records relating to the sale pursuant to Rule 34(b) of the Federal Rules of Civil Procedure. Beloit suggests that it will provide a witness to testify about the inter-relationship between the IEPA settlement and the sale of the Rockton facility and any appraisals but first requests document production and then testimony. (Beloit's Mot. for Protective Order at 10).

The Magistrate Judge agrees with Beloit. For the reasons stated above in Topics 20 and 23, and pursuant to Rule 31(a)(3) of the Federal Rules of Civil Procedure, the Magistrate Judge orders Topic 8 be answered via written response within 14 days of this Order.

## 8. Topic 9

Topic 9 seeks "Beloit's (including its agents) evaluation and estimation of the cost of Remediation of the Site including knowledge of estimates generated by Giuffre, USEPA or IEPA." Century's support fort this Topic is discussed above under Topics 2-6. Beloit asserts that it has already produced all clean-up estimates in its possession and the person who knows most about these

clean-up costs is Ken Quinn, who Beloit states will also likely be one of Beloit's experts. (Beloit's Mot. for Protective Order at 11). Beloit suggests that if Century cannot wait to depose Ken Quinn until the expert phase of the case, that Beloit can respond by way of interrogatory on its knowledge of any clean-up estimates generated by Guiffre, USEPA, or IEPA. (*Id.*).

The Magistrate Judge disagrees with Beloit. Century does not have to wait until the expert phase to have a 30(b)(6) witness testify as to Topic 9's notice. Rather, as stated previously, Beloit must designate an individual. That designee must make a reasonable search for the information based on the circumstances and be prepared to testify based on that reasonable search as to Topic 9. *Crouse Cartage Co.*, 2003 WL 118001, at * 5; *Canal Bridge Co*, 2001 WL 817853, at *1; *Alexander*, 186 F.R.D. at 152. The Magistrate Judge orders this be done within a reasonable time.

## 9. Topic 10

Topic 10 seeks "Beloit's reason and intent for selling the Site including its knowledge of the possible future use of the Site and any and all estimated anticipated profits, if any from the Remediation for the Site." Beloit argues that Topic 10 is irrelevant, and if discoverable, better suited for interrogatory.

The Magistrate Judge disagrees with Beloit. Century is attempting to ascertain the real terms of this package deal put together by Beloit and how much, if any, of the $5.7 million settlement Century is responsible to pay. Such information is therefore relevant to the instant case. Beloit must designate an individual to speak on behalf of the corporation as to Topic 10. The Magistrate Judge orders this be done within a reasonable time.

## 10. Topic 11

Topic 11 seeks "The status of the Remediation of the Site including any and all

Communications between Guiffre II, LLC and the USEPA, the IEPA and consultants/engineers conducting the remediation activities at the Site, including the identity of such engineers and/or consultants." Beloit argues that Topic 11 is misdirected because Beloit no longer owns the property and is undergoing liquidation in bankruptcy. (Beloit's Mot. for Protective Order at 11). Beloit suggests that if Century desires to know about the status of the remediation then it should follow up with Guiffre and contact the USEPA and the IEPA. (*Id.*).

The Magistrate Judge disagrees with Beloit. Beloit is to designate a Rule 30(b)(6) witness who, after performing a reasonable search for information, can testify as to Topic 11. However, the Magistrate Judge notes that the witness is only required to put forward information available to the corporation. If no information is found then Beloit has to designate an individual who can testify about the search for the information. As previously stated however, before testifying that no information has been found, the designee must perform a reasonable search for information. Therefore, if Beloit can designate an individual to testify as to Topic 11, the Magistrate Judge orders this done within a reasonable time.

## 11. Topic 12

Topic 12 seeks "Any and All Communications between Guiffre II, LLC, Beloit, UEPA and IEPA Relating to or Concerning possible recoveries of monies under insurance policies issues to Beloit and the reasons why Beloit's insurers were not notified of the negotiations of the settlement with the USEPA/IEPA." Century's support for this Topic is discussed above under Topics 2-6. Beloit asserts three objections to Topic 12. First, Beloit argues Topic 12 is flawed because it unreasonably expects a Beloit witness to testify about all communications. (Beloit's Mot. for Protective Order at 9). Second, Beloit argues that any legal strategy that it may have had with regard

to insurance recoveries is protected by attorney work-product privilege. (*Id.*). Lastly, Beloit offers to answer the question of why it did not notify insurers through contention interrogatories. (*Id.* at 9-10). As to the last argument, Beloit fears any witness as to Topic 12 will be a lawyer and the deposition would invariably degenerate into an argument. (*Id.* at 10).

The Magistrate Judge will handle Topic 12 in two separate parts. First, as to the communications between Guiffre, Beloit, UEPA and IEPA relating to possible recoveries, the Magistrate Judge orders Beloit to designate a 30(b)(6) witness to testify as to Topic 12 within a reasonable time after a reasonable search. Second, as to the reasons why Beloit insurers were not notified of the negotiations of the settlement with the USEPA/IEPA, the Magistrate Judge orders Beloit answer that part of the notice via written answer pursuant to Rule 31 which allows for a "deposition upon written questions [to] be taken of a public or private corporation ... in accordance with the provisions of Rule 30(b)(6)." Fed. R. Civ. P. 31(a)(3).

## 12. Documents Relating to the IEPA Settlement and the Sale of the Site

The Magistrate Judge orders Beloit, as per its alleged agreement with Century, to turn over all documents in regards to Requests Number 38 and 39. The Magistrate Judge orders this done within 14 days of this Order.

*II. Century's Second Motion to Compel*

Century's Second Motion to Compel seeks two sets of documents listed on Beloit's privilege log. As to the first set of documents, Century seeks what it refers to as the "Fishman" documents. Specifically, Century seeks the following documents from the "Fishman" documents:

• B5 0323-381:        E-Mail correspondence from attorney regarding status of Rockton and Princeton, containing draft pleading and documents with hand written notes used in preparation of pleading.

• B5 0489-0645        File containing e-mail correspondence from attorneys, as well as marked-up drafts of pleadings, related to the US EPA claims in Beloit bankruptcy

• B5 0909        Handwritten notes by attorney REDACTED & document PRODUCED

• B5 0911-912        E-mail correspondence from attorney regarding Giuffre issues, containing legal advice related to financial concerns

• B5 2116-2139        Handwritten notes by attorney REDACTED & document PRODUCED

• B5 2140-2141        E-mail correspondence from attorney regarding Giuffre, containing legal advice related to the substitution of Giuffre from Beloit

(Century's Second Mot. to Compel at 4). As to the second set of documents, Century seeks all what it refers to as the "Johnson & Bell" documents, approximately sixty-four documents, except for the first four entries. Century did not list each document but provided examples as to certain entries which Century argues are discoverable:

*Description Provided by Beloit*

• JB PR 0032        E-mail correspondence from attorney regarding background of litigation and status of same in preparation for meeting

• JB PR 0034-0042        Facsimile correspondence regarding Blackhawk Facility including memorandum prepared by attys. P. Comella and A. Perellis addressing

17

settlement options for Blackhawk

• JB PR 0043-0047  Facsimile correspondence containing confidential settlement estimates for Blackhawk facility

(*Id.* at 5).

Century argues that the Illinois Supreme Court case *Waste Management Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E. 322 (1991), as well as the cooperation clause in the insurance policy, compel Beloit to provide Century with both sets of documents listed on the privilege log. (*Id.* at 3). Beloit essentially argues that both sets of documents on the privilege log are protected by attorney-client privilege and/or work-product privilege. (Beloit's Resp. to Century's Second Mot. to Comp. at 4). Before proceeding, the Magistrate Judge must discuss the *Waste Management* case.

In *Waste Management*, Waste Management Inc. ("Waste Management") purchased insurance policies that provided indemnity for defense costs arising out of any lawsuit concerning Waste Management's ownership of several waste sites. 579 N.E.2d at 325. After settling one such lawsuit, Waste Management sought indemnification from International Surplus Lines Insurance Company ("International") and American Risk Insurance Company ("American"), which denied coverage. Waste Management ultimately sued International and American over the coverage issue, and during discovery, refused to provide International and American with documents relating to the underlying waste site litigation, citing attorney-client and work-product privileges. *Id.* The Illinois Supreme Court found that neither privilege applied to the case because International and American and Waste Management had a common interest in defending the underlying litigation--even though International and American provided no defense and did not participate in the underlying waste site litigation. *Id.* at 328.

18

The *Waste Management* case appears to govern the outcome of the Magistrate Judge's decision and require Beloit to turn over all the "Fishman" documents and the "Johnson & Bell" documents if the material Century sought was covered only by the attorney-client privilege. The Magistrate Judge acknowledges that Illinois law controls the attorney-client privilege issues. However, federal law governs questions of work product privilege. *See Dendema, A.B. v. Denbur, Inc.*, No 00 C 4438, 2002 WL 54551, at *3 (N.D. Ill. Jan. 15, 2002); *CSX Transportation, Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555, 560 (N.D. Ill. 1999).

### A. Attorney-Client Privilege

In *Waste Management*, the Illinois Supreme Court found that the attorney-client privilege did not apply because the common-interest doctrine rendered the attorney-client privilege inapplicable. 579 N.E.2d at 325. The common interest doctrine "applies when an attorney acts for two clients who share a common interest, rendering communications between one client and the attorney unprotected by attorney-client privilege in subsequent litigation between the two clients." *CSX Transportation*, 187 F.R.D. at 559 (*citing Waste Management*, 579 N.E.2d at 328). The Illinois Supreme Court stated that because International and American and Waste Management had a joint interest in defending the underlying litigation, even though International and American provided no defense and did not participate in that litigation, the common interest doctrine applied and the attorney-client privilege was inapplicable. In giving its reasoning for such a holding,[2] the Illinois Supreme Court

---

[2] The court's holding as to the common interest issue was independent of the court's finding that the insurance policy's cooperation clause required the insured to produce all communications from the underlying law suit with defense counsel. The cooperation clause in the insurance policy is similar to the cooperation clause at issue in this case. The cooperation clause in Beloit's insurance policy states, in pertinent part:

stated:

> In a limited sense, counsel for [Waste Managment] did represent both [Waste Management] and [International and American] in both of the underlying litigation since [International and American] were ultimately liable for payment if the plaintiffs in the underlying action received either a favorable verdict or settlement. To deny discovery in this instance would be to disregard considerations of public policy which require encouragement of full disclosure by an insured to his insurer.

*Id.* at 529.

The facts in *Waste Management* as they applied to the court's ruling on the attorney-client privilege are virtually indistinguishable from the instant case. Both *Waste Management* and this case involve indemnity policies that resulted in litigation between insured and insurers because of denial of coverage for the insured's underlying litigation. Also, both cases involve the situation where the insured procured its own defense counsel and the insurer did not participate in the underlying litigation. Therefore, no blanket attorney-client privilege is available for Beloit.

However, the Magistrate Judge notes that the *Waste Management* holding does not apply to communications between Beloit and its attorney "regarding the adversarial relationship between [Beloit] and [Century] that developed during the underlying litigation." *CSX Transportation*, 187 F.R.D. at 560. On that issue, no common interest existed regardless of whether they arose during the underlying litigation. Therefore, Beloit may, if applicable, redact information and withhold

---

3. Insured's Duties in the Event of Occurrence, Claim or Suit ...

(c) The insured shall cooperate with The Company and upon The Company's requires, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage or advertising injury with respect to which insurance is afforded under this policy.

documents relating to the communications between Beloit and its attorneys with regards to prosecuting the instant case.

## B. Work-Product Privilege

The work product privilege protects from disclosure material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) ... ." Fed. R. Civ. P. 26(b)(3). The work product doctrine is "distinct from and broader than the attorney-client privilege." *Coltec Industries Inc. v American Motorists Ins.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000). The purpose of the work product doctrine is to protect the "adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions, thereby insuring that the litigator's opponent is unable to ride on the litigator's wits." *Certain Underwriters at Lloyds v. The Fidelity and Casualty Co. of New York*, 1997 WL 769467, at *3 (N.D. Ill. Dec. 9, 1997). Unlike attorney-client privilege, work-product privilege is governed by federal law. *See* Rule 26(b)(3). *See also A.O. Smith Corp. v. Lewis Overbeck & Furman*, 1991 WL 19220, at *4 (N.D. Ill. Sept. 23, 2001)("Because the source of law in work-product terms is federal rather than state, the treatment of that subject by the Illinois Supreme Court in *Waste Management* does not apply here."); *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995)("Unlike the attorney-client privilege, the work-product doctrine is governed by a uniform federal standard even in

diversity cases.")[3]

Under Rule 26(b)(3), there appear to be three reasons present why Beloit would not have to disclose materials they deem work product to Century: 1) a relevancy objection under Rule 26(a); 2) the probability of disclosing strategy to the other side in the underlying action; and 3) an argument that Beloit's disclosures would provide Century with Beloit's strategy in anticipation of litigation against Century. If none of these three reasons exists, then the Magistrate Judge sees no reason why Beloit should not have to disclose the documents listed on the privilege logs because of work-product privilege to Century.

Turning first to the "Fishman" documents, Century argues these documents "specifically relate to the underlying site at issue, the Rockton facility, and also relate to either the settlement and/or sale of the facility to Guiffre." (Century's Second Mot. to Compel at 4). Century relies on *Waste Management* in arguing that these documents are not confidential or privileged based on work product. (*Id.* at 5).

Beloit argues that Century's belief that the "Fishman" documents described on the privilege log specifically relate to the underlying site at issue is inaccurate. Rather, "handwritten notes by attorney," the description given by Beloit, does not in any way indicate the topic of those notes.

---

[3] It should also be noted that Federal Rules of Civil Procedure Rule 26(b)(3) encompasses more materials and extends to more individuals then Illinois' work-product Rule 201(b)(2). *Compare* Fed. R. Civ. P. 26(b)(3)("[A] party may obtain discovery of documents and tangible things ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case ... ."), *with* Ill. R. Civ. P. Rule 201(b)(2)("Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney.")

(Beloit's Resp. to Century's Second Mot. to Compel at 5). Further, Beloit states that "simply because a document relates to a particular facility ... that document is not for that reason discoverable." (*Id.*).

As an initial matter, it appears Beloit is raising a relevancy argument, although not specifically stated. As stated above, if determined to be irrelevant, then Beloit would not have to disclose the documents. However, based on the descriptions provided by Beloit, the Magistrate Judge can not hold the documents to be irrelevant. For the reasons previously stated in this opinion, the request is at the very least reasonably calculated to lead to relevant material. As to the probability of disclosing strategy to either Guiffre, the IEPA, or the USEPA, the Magistrate Judge finds little probability present. For all intensive purposes, the underlying litigation is finished. However, because there is a chance that the underlying case is not final, or there may be further litigation between the above parties, the Magistrate Judge orders the parties to prepare an appropriate protective order before any production. Lastly, the "Fishman" documents do not appear to be product developed in anticipation of the instant case between Beloit and Century. Therefore, the Magistrate Judge orders that Beloit submit the "Fishman" documents to Century in conformity with this Order. Beloit may mark "highly confidential" on the documents and, if appropriate, produce a second privilege log in conformity with this Order.

With regards to the "Johnson & Bell" document, Century argues the "Johnson & Bell" documents address cost estimates that relate to the clean up and settlement of the Rockton facility and are thus directly relevant to this action. (Century's Second Mot. to Compel at 5). Additionally, Century claims certain documents withheld from the "Johnson & Bell" documents are reflected within attorney invoices which Beloit seeks reimbursement. (*Id.*).

Beloit argues some of the documents Century seeks to examine are "core work product documents prepared by Beloit's lawyers evaluating settlement options in the insurance case against Employers Insurance of Wausau." (Beloit's Resp. to Century's Second Mot. to Compel at 4). However, Beloit agreed, in its motion, to produce JB PR 0043-0047 because those documents consist of "one iteration of clean-up estimates for the Beloit site which Century should already have in its possession." (*Id.*).

Based on the representations made by Beloit in its response to Century's Second Motion to Compel, the Magistrate Judge has some apprehensions as to the relevancy of the "Johnson & Bell" documents. Even assuming the "Johnson & Bell" documents are relevant, allowing Century documents which evaluate settlement options in the insurance case against Employers Insurance of Wausau would provide a tactical advantage for Century by disclosing strategy that Beloit might use in the present litigation against Century. As agreed to by Beloit, Beloit is ordered to produce JB PR 0043-0047. As to all other "Johnson & Bell" documents, the Magistrate Judge denies Century's Second Motion to Compel for the reasons stated in this opinion.

## Conclusion

Century's Motion to Compel is granted in part and denied in part. Beloit's Motion for Protective Order is also granted in part and denied in part. The Magistrate Judge orders Beloit to designate a 30(b)(6) witness to answer Topics 28, 29, and 30 of Century's first deposition notice and Topics 2, 3, 4, 5, 6, 7, 9, 10, 11, 12(a) of Century's second deposition notice. The Magistrate Judge orders this done within a reasonable time. Further, the Magistrate Judge orders Beloit to answer Topics 20 and 23 of Century's first deposition notice and Topics 1, 8, and 12(b) via written response

within 14 days of this Order. Beloit is also ordered, as per its alleged agreement with Century, to turn over all documents in regards to Request Number 38 and 39. Century's Second Motion to Compel is granted in part and denied in part. The Magistrate Judge orders that Beloit submit the "Fishman" documents to Century in conformity with this Order. Beloit may mark "highly confidential" on the documents and, if appropriate, produce a second privilege log in conformity with this Order. With regards to the "Johnson & Bell" documents, the Magistrate Judge finds providing Century documents which evaluate settlement options in the insurance case against Employers Insurance of Wausau would provide a tactical advantage for Century and therefore denies Century's Second Motion to Compel. However, as agreed to by Beloit, Beloit is ordered to produce JB PR 0043-0047.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 2/13/03